UNITED STATES DISTRICT COURT WESTERN DISTRICT WISCONSIN

Christopher Goodvine,

        Plaintiff,

v.

Sheriff Schmaling,

Nurse Practitioner Latisha,

Nurse Practitioner Remus,

Dr. Adams,

Nurse Betsy,

Nurse Rebecca,

Jane Doe Nurses 1-6,

Sergeant Ericson,

Sergeant Lowery,

John Doe Sergeants 1-4,

Vital Core Health Strategies, Inc.,

        Defendants.

Case No. 23-cv-560-wmc

**JURY TRIAL DEMANDED**

---

## CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C.§1983 WITH JURY DEMAND

### I. JURISDICTION AND VENUE

1. This is a civil rights complaint and action brought pursuant to 42 U.S.C.§1983 to redress the deprivation of rights, under color of state law, secured by the U.S. Constitution. This Court has jurisdiction under 28 U.S.C.§1331 and 1343.

2. Venue in this Court is proper as it is the district the plaintiff resides in and where the claims giving rise to this action occured, pursuant to 28 U.S.C. §1391.

### II. PARTIES

3. The plaintiff, Christopher Goodvine, is a United States citizen currently confined at the Columbia Correctional Institution(CCI), a Wisconsin Department of Corrections(WDOC) facility in Portage, Wisconsin.

4. Sheriff Schmaling is the duly elected sheriff of Racine County, Wisconsin.

5. Dr. Adams and Nurse Practitioners Latisha and Remus are supervisory medical staff at Racine County Jail(RCJ), and are responsible for the provision of healthcare to inmates at the Jail.

6. Nurses Betsy and Rebecca are the nurses at RCJ and are responsible for the provision of healthcare to inmates at the Jail.

7. Jane Doe Nurses 1-6 are healthcare professionals at RCJ, Jane Doe Nurse No.1 conducted plaintiff's booking room triage on July 11, 2023; Doe Nurses 2-6 are "Med Nurses" who distributed medication at the Jail.

8. John Doe Sergeants(Sgt.) 1-4, and Ericson and Lowery, are Correctional staff employed as supervisory correctional staff at the RCJ.

9. Vital Core Health Strategies, Inc., is a private corporation contracted by the Jail for the provision of healthcare to it's detainees.

### III. ALLEGATIONS AND FACTUAL BACKGROUND

#### A. MEDICAL BACKGROUND

10. The plaintiff has painful medical conditions: Ulnar Neuropathy, Cubital Tunnel, Plantar Fasciitis and Metatarsalgia. These conditions cause him daily pain and discomfort.

11. To manage the pain he experiences, he has been prescribed Lyrica and Tylenol.

#### B. PLAINTIFF'S TRIPS TO RACINE COUNTY JAIL

12. The plaintiff is currently involved in three seperate criminal cases in Racine County which has caused him to frequently be transported to the RCJ.

13. Recently, in the past three months, he has been transported to the Jail on Writs. These stays at the Jail have lasted approximately five days to a week.

14. On April 12, 2023 the plaintiff was transported to the Jail and returned to CCI on April 19, 2023.

15. On July 11, 2023 plaintiff was again transported to the Jail and returned to CCI on July 17, 2023.

16. On July 24, 2023 plaintiff was again transported to the Jail and returned to CCI on July 28, 2023.

#### C. DEFENDANT'S DELIBERATE INDIFFERENCE

17. Wis. Stat. §302.388 requires prisons to provide healthcare information when a prisoner transfers from one facility to another. To comply with this statute, WDOC sends a Health Transfer Summary(HTS) or DOC-2077 form, to ensure continuity of care for it's prisoners who leave for court appearances. Along with this HTS, the WDOC sends a complete list of all current medications the transferring inmate is prescribed. Exhibit 0001 is a true and correct copy of the three Health Transfer Summaries CCI sent with plaintiff when he left CCI on the Writs mentioned in ¶¶12-16, supra.

18. When plaintiff arrived at the Jail on April 12, 2023, he was given a standard booking room triage by Nurse Rebecca. He informed her of his painful health conditions and his prescription for Lyrica and Tylenol. Plaintiff ensured that she documented it in her intake report that he had painful neuropathy and needed Lyrica or an adequate alternative to treat his neuropathy and to prevent withdrawls, as Lyrica is a scheduled narcotic which, if suddenly stopped, can lead to painful withdrawls. Unfortunately, this nurse took no steps to ensure the continuity of care, the prevention of withdrawls, and the treatment of plaintiff's pain from neuropathy and feet conditions while at the Jail.

2

19. On July 11, 2023 plaintiff was again triaged in the booking room by Nurse Jane Doe No.1. As he did with the nurse mentioned in ¶18, plaintiff explained his conditions and the medications(meds) he is prescribed. He ensured she documented this in her intake report. Unfortunately, this nurse took no steps to ensure continuity of care, the prevention of withdrawls, the treatment of plaintiff's pain from neuropathy and his feet conditions while at the Jail.

20. On July 24, 2023 plaintiff was again triaged in the booking room by nurse Betsy. As he did with the other two nurses on his previous trips to the Jail, the plaintiff informed nurse Betsy of his painful health conditionsand the prescriptions for Lyrica and Tylenol to manage his pain. He ensured that she documented this in her intake report. Unfortunately, this nurse took no steps to ensure the continuity of care, prevent withdrawls, and treat plaintiff's pain from neuropathy and his feet conditions.

21. Indeed, not only did defendants not provide the Lyrica, they did not even provide plaintiff Tylenol. In fact, they made no effort to treat his neuropathy at all.

22. Plaintiff sent health staff at least a half-dozen medical grievances and a similar number of health service requests, all of which were received and responded to, but none of which resulted in ANY care at all. Particularly disturbing, during these three stays at the Jail, despite his many grievances and requests for care for his pain and withdrawls, he was NEVER once assessed by healthcare staff at the Jail, or any of the medical defendants beyond the initial booking room triage.

23. Indeed, as explained below, healthcare staff at the Jail refused to even provide me their names, the names of their superiors, the doctor's name, or the director of health services at the Jail.

24. Jane Doe Nurses 2-6 delivered meds to plaintiff's pod/living unit at least twice daily. Each time plaintiff spoke with them and told him he was in pain and need his Lyrica. He also informed them he was prescribed to Tylenol. There was a huge bottle of Tylenol on top of the med cart, yet these nurses refused to even give him a single dose of Tylenol. Each of these nurses refused to relate his concerns and lack of care to their superiors. In short, they did absolutely nothing.

25. Plaintiff also spoke to correctional sergeants Ericson,Lowery, and Doe Sergeants 1-4 about his pain and withdrawls, to a person, they did nothing.

26. The Jail, having delegated the provision of care to Vital Core Health Strategies, Inc., has completely divorced itself from the provision of care responsibility it assumes when it detains people. However this does not fully absolve them, and when it became obvious to the sergeants that I was not even receiving

Tylenol as well as my Lyrica, they still did nothing in the face of obviously bad medical care, consisting of no care at all, and they had a duty to act.

27. Indeed, John Doe Sergeant No.1 reported to plaintiff's unit on July 26, 2023, the plaintiff had hours earlier spoken to Jane Doe Nurse No.2 about his medication and pain. She refused to even give her name to him. Her and the plaintiff exchanged insults. When the sergeant arrived hours later, plaintiff was trying to speak with him as the supervising officer on the scene. Rather than speak with the plaintiff, the sergeant gave plaintiff "Five seconds" to return to his cell. As plaintiff was trying to explain his pain and issues, the defendant counted down and ordered his officer to hit plaintiff with a burst of pepper spray. It was a gratuitous infliction of excessive force upon a non-disruptive, non-violent detainee, who only wanted to see a medical professional, or get some Tylenol at least.

28. Plaintiff was informed that his Lyrica was "put on hold" by the provider, while at the Jail. Dr. Adams, Nurse Practitioner(NP) Latisha and NP Remus all knew plaintiff took Lyrica because of neuropathy or some serious underlying condition. Further, they all knew that sudden cessation of this med often leads to withdrawls. They further knew that plaintiff was not even getting his Tylenol. All had authority to either provide Lyrica or at least the Tylenol. All failed to do a single thing to ensure the continuity of plaintiff's care, to prevent the onset of withdrawls, or to treat plaintiff's pain from neuropathy and his feet conditions while at the Jail.

29. It was the practice, policy, and custom of sheriff Christopher Schmaling, Racine County, and Vital Core Health Strategies, Inc., to routinely shirk their duty to assume the continuity of care when a detainee was admitted to the Jail with valid prescriptions for meds like Lyrica, Gabapentin, or other narcotic prescriptions. Indeed, Racine County Jail has a long history of not providing inmates at it's Jail,on writs from prison, with continuity of care for their serious medical conditions. See KIRSCH V. RACINE COUNTY SHERIFF, 2008 WL 4872595 at *3 Indeed, each of the three nurses who conducted the booking room triage of the plaintiff informed him they were certain he would not be provided the Lyrica due to their experience with the practices at the Racine County Jail, as well as Vital Core Health Strategies' policy.

## IV. CAUSES OF ACTION

30. Plaintiff realleges and incorporates by reference ¶¶1-29, supra.

31. Defendants Schmaling, Latisha, Remus, Adams, Jane Doe Nurses 1-6, Betsy, Rebecca, Ericson, Lowery, and John Doe Sergeants 1-4 each failed to provide, and denied access to, medical care, were deliberately indifferent to plaintiff's seri-

ous medical needs, and subjected him to a substantial risk of serious harm intolerable under the Constitution each time plaintiff was confined at the Jail between April and July 2023. This paragraph constitutes the First, Second and Third Causes of Action.

### Fourth Cause of Action

32. Plaintiff realleges and incorporates by reference ¶¶1-29, supra.

33. Defendant John Doe Sergeant No.1 abridged plaintiff's rights under the Eighth Amendment when, without any real or perceived threat to Jail security, he had plaintiff sprayed with pepper spray because he would not stop complaining and comply with his five second order.

### Fifth Cause of Action

34. Plaintiff realleges and incorporates by reference ¶¶1-29, supra.

35. It is the practice, policy, or custom of Sheriff Schmaling, Vital Core Health Strategies, Inc., and Defendants Latisha, Remus, and Adams to, as explained above, routinely shirk their duty to assume continuity of care for those at it's Jail on Writs from prison and deny, without any medical judgment at all, valid prescriptions for narcotics like Lyrica. Nor would the Jail provide alternatives or take immediate measures to prevent or ease withdrawls.

### RELIEF REQUESTED

Wherefore, the plaintiff requests that the Court grant the following:

1) Compensatory and punitive damages in an amount to be determined at trial;

2) Injunctive and declaratory relief enjoining defendants from the conduct described herein;

3) All fees and costs associated with this matter to the fullest extent permitted by law; and

4) Any other relief the Court deems just and equityable.

### VERIFICATION OF COMPLAINT

Pursuant to 28 U.S.C. §1746, I, Christopher Goodvine, swear that the foregoing is true and correct, under penalty of perjury.

This 15 day of August, 2023.

Christopher Goodvine#310458
Columbia Corr. Inst.
P.O. BOX 900
Portage, WI 53901-0900